MICHIGAN PAPER CO. *v.* KALAMAZOO VALLEY ELEC-
TRIC CO.

1. TRIAL—RECEPTION OF EVIDENCE—OBJECTIONS—SUFFICIENCY.
    In an action for loss of profits, resulting from the shutting
    down of plaintiff's mill in consequence of defendant's negli-
    gence, the admission of testimony that the mill had orders to
    keep it running, without requiring the production of the or-
    ders, is not erroneous as against a mere general objection of
    irrelevancy and immateriality, though the orders were the
    best evidence.

2. EVIDENCE—ADMISSION—HARMLESS ERROR.
    The error in admitting record evidence not used by the party
    introducing it is harmless.

3. WATERS AND WATERCOURSES—INJURIES TO MILLS—EVIDENCE
    —ADMISSIBILITY.
    Where, in an action for loss of profits resulting from the shut-
    ting down of plaintiff's mill in consequence of defendant's
    negligence in causing the formation of an ice jam, acting as
    a dam and setting the water back on plaintiff's wheel, defend-
    ant claimed that like jams occurred prior to the construction
    of its dam, evidence that a break in plaintiff's dam occurring
    at a time anterior to the building of defendant's dam had
    more to do with the closing down of plaintiff's mill at that
    time than the ice jam then formed was admissible as the
    basis for evidence as to the effect on plaintiff's mill of the
    washing out of the dam, and whether the situation was the
    same at that time as at the time of the happening of the in-
    jury complained of.

4. EVIDENCE—ADMISSION—HARMLESS ERROR.
    In an action for loss of profits resulting from the shutting
    down of plaintiff's mill in consequence of defendant's negli-
    gence, error, if any, in admitting evidence of the amount of
    money plaintiff had invested in its plant, was harmless.

5. WATERS AND WATERCOURSES — INJURY TO MILL — NOTICE OF
    INJURY.
    In an action for loss of profits resulting from the shutting down
    of plaintiff's mill in consequence of defendant's negligence
    in the management of its dam, evidence that plaintiff noti-
    fied defendant of the injury at the beginning thereof, to-

gether with the contents of the notice, is admissible, as bearing on defendant's negligence in not remedying the defects of which complaint was made.

6. SAME—DAMAGES—RIGHT OF RECOVERY.

Where a mill owner who had orders enough to keep his mill in continuous operation, and who had had no dull season for two years, was compelled to shut down in consequence of the negligence of defendant, he was entitled to damages for lost profits though he filled all his orders when he commenced to run again; for, though he merely received orders enough to run during the period when the mill was not shut down, it would not follow that he would have permitted the mill to remain idle if it had been in condition to run.

7. SAME—INSTRUCTIONS.

In an action for loss of profits resulting from the shutting down of plaintiff's mill in consequence of defendant's negligent management of its dam by holding the water at a high level and allowing the formation of an ice jam, an instruction that defendant had a right to maintain its dam at a height that would not interfere with plaintiff's power under ordinary circumstances, and that it was not responsible for damages resulting from slush ice below plaintiff's tailrace, causing the water to set back on plaintiff's wheel, was erroneous, because requiring a verdict for defendant, though the jury should find that the formation of the slush ice was an occurrence which defendant might reasonably have foreseen and avoided without injury to itself.

Error to Allegan; Padgham, J. Submitted May 5, 1905. (Docket No. 147.) Decided July 21, 1905.

Case by the Michigan Paper Company against the Kalamazoo Valley Electric Company for damages caused by flooding. There was judgment for plaintiff, and defendant brings error. Affirmed.

*L. L. Thompson* (*Howard & Howard,* of counsel), for appellant.

*Wilkes & Stone,* for appellee.

BLAIR, J. The plaintiff in this case operates a paper

mill at the village of Plainwell, in Allegan county. The power for said mill is partly steam and partly water. The water power is obtained by means of a dam across the Kalamazoo river in the village of Plainwell. In the summer of 1902, the Plainwell Construction Company, Limited, built a dam across the Kalamazoo river below the plaintiff's mill, and leased the same and the water power obtained therefrom to the Kalamazoo Valley Electric Company, the defendant and appellant. The defendant and appellant used the power obtained at this lower dam for generating electricity. It commenced operations in December, 1902. The latter part of December, 1902, commencing about Christmas time, and extending into the first week of January, 1903, there was an ice jam in the river, formed between the dams of the plaintiff and the defendant, which ice jam, acting as a dam, set the water back upon the plaintiff's wheel to such an extent that it could not run its mill for some days.

Plaintiff brought this action against defendant, claiming that the defendant so negligently operated and managed its said dam as that it prevented the free running of slush ice down the river; that by its said dam it held the water to a level of about a 14-foot head; that no spillway was provided at said dam to allow the water to flow away, and thus keep open the surface of the river above the dam to allow such slush ice to escape. Nor did the said defendant, as it claims, so manage or operate its waste gates at said dam as to allow the free passage of the water and keep an open current, and thus furnish a means of escape for slush ice running at the time in the river; and, on the contrary, the plaintiff claims, because of such negligent operation and management of said dam and its waste gates, that it caused the pond above to become still water, and, freezing over, caused the slush ice on its downward course, below the plaintiff's mill, to be stopped, blocked up, and form a dam in such a way that it backed the water up to the plaintiff's mill, and prevented its operation to such an extent that it could not operate its mill

or make paper for several days; and thereby, it says, it lost profit which it would have otherwise made, and was put to other expense in protecting its property during the time of its shutdown.

The defendant, on its part, and as a defense, denies any negligence on its part, in the management or operation of the said dam, and denies that it is in any way responsible for the condition of things as claimed by the plaintiff at its mill in December and the other dates, and also claims that, if the water was raised in the Kalamazoo river by a jam of slush ice, so as to cause damage to the plaintiff by stopping its mill, as claimed, it was one of those extraordinary occurrences of nature which could not reasonably be foreseen, and that no one, therefore, could be responsible for it. Plaintiff had judgment, and defendant brings the record to this court for a review upon writ of error.

The assignments of error upon which defendant relies for a reversal are grouped by its counsel in their brief under three heads, as follows:

*First.* Erroneous rulings of the trial judge in the admission and exclusion of evidence.

*Second.* The erroneous refusal to give defendant's first and fourth requests to charge.

*Third.* Errors in the charge.

We shall consider the points of counsel in the order which they have adopted.

*First.* (*a*) The court permitted several leading questions to be answered. In no instance was the claimed violation of the rule of sufficient importance to warrant a reversal of the case, and, if error was committed, it was harmless error.

(*b*) The court permitted witnesses for plaintiff to testify that at the time the mill was shut down plaintiff had orders ahead, without producing the orders themselves. We think this evidence was clearly material and relevant. Plaintiff was not seeking to recover for lost or canceled orders. In fact, it was shown that no orders on hand were lost or canceled, but all were subsequently filled.

The damages claimed by plaintiff were the loss of profits per day which it would have made if the mill had been running during the period when it was shut down. As bearing upon this question, it was not only material, but necessary, to show that the mill had work to do during that period. The objection that, if the fact that the mill had work enough on hand to keep it running during the period in question was to be shown by orders on hand, the orders themselves were the best evidence, and should be produced, was never specifically called to the attention of the trial judge, and in fact is not made in the brief in this court. The proceedings in this regard in the court below were as follows:

" *Q.* At the time you shut down during last winter, did your mill have orders ahead?

"*A.* Yes, sir.

" *Q.* It could have run all the time?

" *Mr. Howard:* I object to that as irrelevant, immaterial, and incompetent.

" *The Court:* Why wouldn't it be competent? Why would it be irrelevant, under their theory, that they claim damages? Why wouldn't it be competent?

" *Mr. Howard:* I don't think their theory is competent. (Last question read.)

" *Q.* Had orders to keep them busy?

"*A.* Yes, sir.

" *Mr. Howard:* Hold on a minute. Have you any objection to the court ruling on that?

" *Mr. Wilkes:* Not on my part.

" *The Court:* It may stand.

" *Mr. Howard:* Note an exception.   *   *   *

" *Q.* Was there any time during the winter that you did not have orders ahead in work to do?

"*A.* Never.

" *Mr. Howard:* I want all this under objection.

" *The Court:* It may be.

" *Mr. Howard:* An exception.   *   *'   *

" *Q.* Whether they had orders ahead at that time, work ahead?

"*A.* They did.

" *Mr. Howard:* I want that under my objection. All this is in regard to their business and profits. If it can be

considered under my objection and exception, I will not renew it.

" *The Court:* It can be so considered.   *   *   *

" *Q.* Did I ask whether, at these times that you have now referred to, when your mill was shut down, your mill had work to do ?

" *Mr. Howard:* I object to that as irrelevant, immaterial, and speculative.

" *The Court:* The same question, I think, we passed over.   I think he may answer.

" *Mr. Howard:* Note an exception.

" *A.* Yes, sir.

" *Mr. Howard:* If I may have an exception understood on all this question, I won't lug in the objections.

" *The Court:* Yes, sir, all right."

In their brief, counsel for defendant say :

"We insist, if the plaintiff intended to recover profits on the orders it had, but could not fill, that it should at least produce the orders."

Against the objections as made, the rulings were not erroneous.

(*c*) The court overruled defendant's objection to the introduction of certain records, and admitted them in evidence.   The record contains the following statement in regard to these records, viz. :

"The records for the building of the dam, called the 'Botsford Dam,' offered in evidence by the plaintiff, were not read in evidence, or shown to the jury, and were not used by the plaintiff."

The ruling of the court that plaintiff might use the records, in view of the fact that it did not use them, could not have harmed defendant.

(*d*) These assignments are wholly without merit, and require no consideration.

(*e*) The plaintiff was allowed to give testimony in regard to a break in and repairs of the dam across the Kalamazoo river at Plainwell in the winter of 1895–96.   One of the main contentions of defendant was that the evidence did not show that the defendant's dam was respon-

sible for the ice gorging as it did, because it appeared from the undisputed testimony—

"That like jams had occurred in the river before the defendant's dam was constructed. We claim that the evidence shows such a state of affairs in 1885 and 1895. If the defendant is liable for the damages that occurred in the winter after its dam was constructed, why should it not be liable for the damages that occurred in exactly the same way seven years before its dam was constructed at all?"

Plaintiff contended, and gave evidence tending to show, that the break in the Plainwell dam in the winter of 1895–96 had more to do with the closing down of plaintiff's mill than the jamming of the slush ice. The testimony objected to was properly admitted as the basis for evidence as to the effect of the washing out of the dam on plaintiff's mill, and whether the situation and surroundings were the same in 1895–96 as in 1902–03.

(*f*) That plaintiff was permitted to show how much money it had invested in its plant. Conceding that this was error, we do not think it was sufficiently prejudicial to call for a reversal of the case.

(*g*) That the court erred in permitting plaintiff to show that they notified defendant of their claim that their mill was being damaged by the management and operation of defendant's dam. Plaintiff's counsel offered certain letters, one to the defendant corporation, the other to its president, stating that—

"The object of the offer is to show knowledge, brought to the defendant, of the condition at the date of the letter. It also appears that subsequent to that date, the same condition did recur, referred to in the letter, with no effort made to prevent it or alleviate it. * * *

"*Mr. Howard:* I want the same objection to each letter as incompetent, being a statement of the plaintiff in his own behalf.

"*The Court:* Yes, it would be, if it was offered as substantive proof of any facts stated in them, but for the purpose of showing the correspondence between the parties,

as calling their attention to the state of facts they claim to exist, I think it would be proper."

Defendant's counsel then offered to concede that plaintiff notified defendant of its claim that defendant was infringing upon its rights upon the day when such infringement took place. Notwithstanding this concession, the court permitted the evidence to be introduced. The court committed no error in this regard. The plaintiff not only had a right to show that it notified the defendant at the beginning of the injury, which it claimed was caused by defendant's conduct and management of its dam, but what its notice contained, not as substantive proof of the facts stated, but as notice of what it claimed the facts were, as bearing upon the defendant's negligence in not remedying them, if the jury should find that they were facts.

*Second.* The defendant's first and fourth requests to charge were as follows:

"*First.* Under the undisputed evidence in this case, the plaintiff cannot recover, and your verdict must be, 'No cause of action.' * * *

"*Fourth.* The plaintiff's main claim is that the defendant, by the operation of its dam during the past winter, caused the slush ice to dam or gorge below its (plaintiff's) tailrace, and, thus forming, caused the water to set back on the plaintiff's wheel. I charge you that under the law the defendant is not responsible to the plaintiff for any damage thus accruing to the plaintiff; that the defendant has a right to maintain its dam at a height that will not interfere with the plaintiff's power under ordinary circumstances, and in the ordinary state of the water in the river, and cannot be held liable for an accumulation of slush ice that is attributable to natural causes; and every mill owner must take his chance in regard thereto."

As to the first request to charge, counsel say:

"We base our right to this charge upon two grounds: (1) That the evidence did not show that the defendant's dam was responsible for the ice forming in the manner in which it did; and (2) plaintiff did not show damages resulting to itself. We base our contention on the first prop-

osition upon the fact that substantially all the witnesses
in the case, both for the plaintiff and the defendant, testi-
fied that like jams had occurred in the river before the de-
fendant's dam was constructed.   We claim that the evi-
dence shows such a state of affairs in 1885 and 1895.   If
the defendant is liable for the damages that accrued in the
winter after its dam was constructed, why should it not
be liable for the damages that accrued in exactly the same
way seven years before its dam was constructed at all?
*   *   *   No attempt is made to disprove the evidence of
these witnesses, and it clearly establishes the fact that in
1895 or 1896 substantially the very same thing occurred
as that complained of in the plaintiff's declaration.   The
weather was substantially the same; conditions every-
where substantially the same.   That there should be no
misunderstanding about it, we will quote from the testi-
mony of some of the witnesses sworn in behalf of the
plaintiff."

We have examined the voluminous testimony in the re-
cord with diligence, and are satisfied that the court would
not have been warranted in giving this request.   The
testimony is not undisputed, but in conflict; and there is
abundant testimony in support of plaintiff's contention,
both as to the injury being caused by defendant's manage-
ment of its dam, and as to variance between the condi-
tions at the time of the injury and on prior occasions.

The second proposition involved in this request, viz.,
that plaintiff had not shown that it had suffered any dam-
age, is equally unfounded.   Plaintiff's secretary and man-
ager testified that at the time of the injuries in question
they had orders enough ahead to run two or three mills
just like the mill in question; that there was an actual
cash loss each day the mill was shut down of $90.26, and
the net profits for each day were $42.12; that the mill
was shut down for 11 working days, and they had had no
dull season for 2 years.   He also testified as follows:

" Q. How many orders did you have on the last week
in December, 1902, to fill?
"A. I could not tell.   We didn't fill any that week.   I
presume we filled them.   I don't remember.   I have no

recollection of any being canceled.    I suppose we filled the orders we had on hand when we commenced to run."

It is upon this testimony principally that defendant's counsel base their contention that no damage was shown because, they say, "if the plaintiff filled all the orders it had on hand, none were canceled, and it did not have to turn away any business, where did it lose anything?" Even though plaintiff only received or procured orders enough to run during the period when it was not shut down, it would not follow that it would have permitted its mill to remain idle for 11 days, or that it would not have received or procured orders for the 11 days if it had been in condition to run.    The company was paying expenses and getting no returns for these 11 days.    It does not follow that, even if they had not been compelled to shut down then, they would have been compelled to shut down for a like period later on through lack of business, and therefore have been subjected to the same expenses without returns; and in any event the plaintiff would have been entitled to nominal damages, which would be fatal to the request.

The fourth request has respectable authority in its support.    See *Smith* v. *Canal Co.*, 2 Allen (Mass.), 355. There is equally respectable authority to the contrary. See *Davis* v. *Fuller*, 12 Vt. 178; *McCoy* v. *Danley*, 20 Pa. 85; *Cowles* v. *Kidder*, 24 N. H. 364.    We do not think this request contains a correct statement of the law. It requires the court to direct a verdict in favor of the defendant, although the jury should find that the formation and flowage of the slush ice during the winter season was a usual and ordinary occurrence, and the defendant might reasonably and naturally have foreseen that the effect of its maintaining the water at its dam at its highest level would naturally be the formation of an ice jam, which would shut down the plaintiff's mill, and which injurious results might readily have been obviated by the defendant, without injury to itself, by opening its gates sufficiently to create a current and allow the slush ice to pass

on down the river.   The evidence made a case for the determination of the jury, and the request was properly refused.

*Third.*   We do not consider it necessary to consider the objections to the charge specifically.   Most of them are covered by what we have already said, and as to the others we are satisfied that they are not well founded. We think the charge was a clear, impartial, and substantially correct presentation of the case to the jury.

The judgment is affirmed.

MOORE, C. J., and CARPENTER, McALVAY, and MONTGOMERY, JJ., concurred.