### In re MILLER'S ESTATE.

### In re CLAIM OF BENNETT.

1. INTOXICATING LIQUORS — CIVIL-DAMAGE ACTION — EVIDENCE — DEATH.

   In an action, under the law regulating the sale of intoxicating liquors, against a deceased saloonkeeper's estate, to recover damages sustained in plaintiff's contractual rights by reason of the death of her brothers, evidence of the condition and mutilation of the bodies is admissible to show the intoxicated condition of decedents, though the death is admitted by defendant.

2. SAME—DAMAGES—EVIDENCE—CONTRACTS.

   On the trial, for the purpose of sustaining claimant's theory that she was injured in her property rights by the death of her brothers who had agreed for a consideration to support her for life, a memorandum book showing the amount of money expended during the year prior to their death is competent to show what it cost to support the claimant during the period covered.

3. SAME—DAMAGES—INSTRUCTIONS TO JURY—TRIAL.

   It is not improper to instruct the jury, on such trial, that they might take into consideration what the deceased could earn during their expectancy and hers; the contract obligation being limited by the length of the lives of the parties.

4. SAME — TRIAL — CONDUCT OF COUNSEL — PROPRIETY OF ARGU-
MENT.

Any impropriety which may have been committed in the
argument of counsel for claimant, in urging the jury to en-
force the liquor law, was cured by the interposition of the
court and its statement that the question was not one of en-
forcing the law.

5. PLEADINGS—DECLARATION—SUFFICIENCY—DEFINITENESS.

Pleadings and evidence which tend to show that the contract
between claimant and her brothers provided for her support
during her life, show a sufficiently definite agreement, in an
action for damages against a liquor dealer who contributed
to the death of the brothers.

6. INTOXICATING LIQUORS — LIABILITY FOR DEATH — KNOWLEDGE
OF HABITS OF DECEASED.

The right to damages in a civil-damage action is independent
of any knowledge that the liquor dealer may have had con-
cerning the habits of the purchaser, if, in fact, the latter
was in the habit of becoming intoxicated.

7. SAME—JUDGMENTS—RECOVERY BY ANOTHER.

A claim for damages against a liquor dealer for selling to per-
sons in the habit of becoming intoxicated is not barred by a
recovery in a separate action for the same wrong, by another
injured person.

Error to Kalamazoo; Knappen, J. Submitted Febru-
ary 16, 1910. (Docket No. 47.) Decided March 5, 1910.

Case by Dell Bennett against the estate of Henry B.
Miller, deceased, under the civil-damage act. A judg-
ment for plaintiff, on appeal from a disallowance of the
claim by the commissioners, is reviewed by defendant on
writ of error. Affirmed.

*Jesse R. Cropsey* and *Boudeman, Adams & Weston,*
for appellant.

*Harry C. Howard*, for appellee.

STONE, J. This proceeding originated in a claim which
was presented by Dell Bennett as claimant against the
estate of Henry B. Miller, deceased, which was being ad-

ministered in the probate court of Kalamazoo county. The claim was disallowed by the commissioners on claims, and the claimant appealed to the circuit court. A brief statement may aid in an understanding of the claim. In the year 1906 Henry B. Miller was engaged in the retail liquor business in the village of Vicksburg, and, to enable him to engage in the business, he gave a bond with sureties as provided by law, which was approved by the common council of the village, and was filed with the county treasurer. This was for the year commencing May 1, 1906. On December 24, 1906, and while said Miller was engaged in such business, William Munger and Henry Munger, twin brothers, who were about 41 years of age and who resided at Schoolcraft, about five miles west of Vicksburg, visited the last-named place, and it was claimed that said Miller there furnished them with liquor which contributed to their intoxication, and that they there became intoxicated, and that they were persons in the habit of becoming intoxicated, and that while they were on their way home to Schoolcraft, in an intoxicated condition, the same evening, they were both killed by a Grand Trunk railroad engine, both being struck while on the railroad track between Vicksburg and Schoolcraft. Henry B. Miller having died subsequently, the claimant, who is a sister of said William and Henry Munger, presented her claim for $15,000 damages, claiming that she had been injured in her means of support by reason of said deceased having furnished intoxicating liquors to her said brothers as aforesaid.

After claimant appealed to the circuit court, and by stipulation and agreement, a declaration was filed in behalf of the claimant, to which the representative of the estate pleaded the general issue, and gave notice of special matter. Upon the trial of the case, and before the claimant rested her case, the declaration was amended so as to broaden it on the matter of the alleged agreement between the claimant and her brothers at the time she went to live with them. By this amendment the claimant averred

that at the time she left her husband—some 16 years ago— she made a contract with her said brothers, William and Henry Munger, that if they would provide and furnish her means of support, including board and clothes for herself and child, and continue to provide her means of support, board, and clothing *so long as she might live*, she would grant the said brothers the right to live in the family home at Schoolcraft, which home she owned, and that she would go to said home to live with them herself and do all the domestic work, including caring for their clothes, doing their mending and repairing, attending to their room work, cooking their meals, and doing all in her power to make for them a pleasant home; that she accordingly went to live with her said brothers, under the terms of said contract, about 16 years ago; and that she faithfully performed all the terms of the contract on her part to be performed from that time to the death of her said brothers, and that her said brothers did likewise perform all the terms thereof on their part to be performed from the time she so went to live with them until they were killed by the wrongful act of said Miller as hereinbefore set forth; and that, because of the death of her said brothers in the manner aforesaid, she was caused to suffer and endure the loss of her rights under said contract, including her support, board, and clothing, all to her damage, etc. There was a jury trial, resulting in a verdict and judgment for the claimant in the sum of $704. The defendant sued out a writ of error, assigning upwards of 60 errors of the trial court, some relating to rulings upon the introduction of evidence, some in refusing to charge as requested, and some to parts of the charge.

We shall first consider the alleged errors discussed by defendant's counsel upon the oral argument in this court.

1. The first, second, third, fourth, fifth, eighth, tenth, and thirteenth assignments of error relate to questions put to witnesses touching the condition of the bodies of the Munger boys after the accident. The defendant had admitted the death of these men, and it is claimed that it

was prejudicial error to describe the mutilated condition of the bodies to the jury. There is nothing in the record showing that defendant had admitted the intoxicated condition of the men when killed, and claimant contends that the fact that these men were lying on the railroad track before they were hit by the engine, and that they had been furnished liquor a half hour or so before, tended to show that they were intoxicated, and that the evidence of the undertaker and deputy sheriff, complained of, tended to show the position in which the bodies were when struck by the engine. Some of this evidence related to bottles of whisky found on the bodies of the men, the odor of whisky on the bodies, and the number of bottles there found. A somewhat similar question was before this court in *Michigan Paper Co.* v. *Electric Co.*, 141 Mich. 48, 55 (104 N. W. 387, 389). The court there said:

"Defendant's counsel then offered to concede that plaintiff notified defendant of its claim that defendant was infringing upon its rights upon the day when such infringement took place. Notwithstanding this concession, the court permitted the evidence to be introduced. The court committed no error in this regard. The plaintiff not only had a right to show that it notified the defendant at the beginning of the injury, which it claimed was caused by defendant's conduct and management of its dam, but what its notice contained, not as substantive proof of the facts stated, but as notice of what it claimed the facts were as bearing upon the defendant's negligence in not remedying them, if the jury should find that they were facts."

Counsel for defendant argues that the effect of the evidence complained of was to inflame the passions of the jury, and was introduced for that purpose. We hardly think that this claim is warranted by the record. No complaint is made of the argument of counsel for the claimant on this branch of the case, nor does the size of the verdict indicate that the jury were led astray. On this point the court on defendant's request charged the jury as follows:

" I instruct you in this case, if you find the claimant entitled to recover anything whatsoever, that you cannot allow anything whatever because of the manner in which these boys were killed, or on account of the way their bodies were injured. This suit is only for actual damages, and not for anything else, not for mental suffering, shame, mortification, or anything else but actual money loss under the contract alleged in this declaration or claim of the plaintiff in this case. How much has she lost in her means of support under this contract, if you find one existed ?"

We think there was no error in this regard.

2. Appellant next argues the 18th and 19th assignments of error, and claims that they raise the question as to the admissibility of evidence which tended to show what amount the brothers had previously contributed to the support of claimant. A reading of the record where this question is said to have arisen fairly shows that the objection was made to testimony of the nature offered under the declaration. Claimant had there testified that the brothers had contributed for her support and maintenance during the year before their death $500 or $600. The cross-examination shows that defendant's counsel had procured from claimant her memorandum book wherein were set down several items for groceries, provisions, and sundries which claimant claimed had been purchased from money furnished by her brothers beginning March 4, 1904, and extending to and including March, 1906, amounting to $1,006.84. This book was offered in evidence by defendant. Appellant contends that this was no evidence of what it was worth to support claimant. We think it was some evidence of what it had cost to support claimant during the period covered. She gave evidence tending to show that the brothers had agreed to support her during her life. The evidence was material as tending to support her claim, in connection with the other evidence in the case.

3. Counsel for appellant next complains of the charge of the court wherein reference is made to the joint lives of

claimant and her brothers.   That part of the charge is as follows:

" If, under the evidence, you find that the claimant is entitled to a verdict, she will be entitled to recover such actual damages as by the evidence it appears she is suffering by reason of the death and loss of her brothers, resulting, if it did, in her loss of support, and no other damages whatever.   In estimating these damages you should consider simply the amount of loss of her means of support, and award to the claimant such sum as you find will fairly compensate for her loss in that regard from the time of their death and for such length of time thereafter as you may find her expectancy of life to be, taking into consideration the amount these boys would earn *during her expectancy, and their expectancy,* and have furnished, under the proofs in this case, considering the chances of the boys' death and possible loss of work, and everything else relating thereto."

The ages of the brothers, as well as the age of the claimant, were in evidence.   The brothers were 41 and claimant 45 years old, and the mortality tables had been offered, and the jury had been instructed thereon.   It was the claim of the claimant that she was to have been supported by her brothers during her life.   She was the older person.   They would not be presumed to support her beyond the period of *her* life, nor beyond the period of *their* lives, or expectancy.   We do not think that the court erred in calling attention to the expectancy of the lives of the brothers.   There was evidence in the case tending to show their manner of life—that they were persons in the habit of becoming intoxicated.   The jury may have believed that the expectancy of their lives would thus be affected.   The fact that the jury awarded a verdict of $704 may be some proof that they believed from the evidence that the brothers were shortlived men, and would not have lived to support the claimant many years.

4.   The only other matter discussed by appellant in his argument relates to the language of claimant's counsel in his argument to the jury.   During the argument he said:

"These laws, men, are good laws. They are good laws, and they regulate the evil as much as it could be regulated, and as much as it is possible to regulate a thing of that kind. They regulate it so far as it is possible. Now, if you don't enforce the liquor laws—

"*Mr. Adams:* I think I will take an exception to that argument, your honor. This is a case which we contend is based upon a contract, and it is not a question, so far as the jury is concerned, or the court, whether the liquor law is enforced or whether it is not.

"*The Court:* No; I do not think so.

"*Mr. Adams:* I don't think it is proper argument for a jury.

"*The Court:* The question whether the law was enforced or not is not the question in this case, but the question is whether the proof under these pleadings is sufficient to entitle the plaintiff to recover.

"*Mr. Howard:* If I establish the fact that there was a contract, I am entitled then to ask, if they find that fact, to enforce that law, am I not?

"*The Court:* Yes; but they would have to enforce the law, because that is clear under the statute under which the pleadings are drawn.

"*Mr. Howard:* Then that is what I meant by my argument, and I will disclaim anything else. I am not trying to appeal to anything else except to enforce the law in this case.

"*The Court:* No; there ought not to be."

The objection to the argument was not made until counsel had said: "Now, if you don't enforce the liquor laws—" This is probably the objectionable language complained of. We think that this was not very extravagant language, but whatever of error there was in it was cured by the court. The court stated in the presence of the jury that there was no question about the law, but the only question was whether, under the pleadings and evidence, the claimant was entitled to recover. Counsel for claimant disclaimed any intention of violating the rules of court, and the result does not show that the passions of the jury had been inflamed by the argument. This court has recently reviewed the cases in this court upon the subject of the arguments of counsel, and we must say here, as there,

that we do not think the case should be reversed upon that ground.   *Person* v. *Shingle Co.*, 159 Mich. 1 (124 N. W. 522).

5. Another position of defendant is that the contract counted upon in the declaration is uncertain.   No demurrer was filed to the declaration, or to the amendment thereto, and counsel for defendant spent much time in the examination of the claimant upon this subject.   Her claim was, and she seemed to persist in it, that by the agreement she was to be supported by her brothers during her natural life.   This seems to be as definite as such a contract could well be.

6. Counsel also argues the proposition that the judgment should be reversed because Miller did not *know* that the Munger men were persons who were in the habit of getting intoxicated.   There was evidence showing that these men were in the habit of becoming intoxicated.   We think that this question has been settled by this court.   In *McMahon* v. *Dumas*, 96 Mich. 470 (56 N. W. 14), it was said:

"The learned counsel for the defendant insists that there can be no recovery in such cases without proof that the defendant *knew* that the person was in the habit of becoming intoxicated.   The statute does not predicate the right of recovery upon such knowledge on the part of those selling intoxicating liquors.   It gives an absolute right of action against those who have caused or contributed to the intoxication which results in injury."

In *Radley* v. *Seider*, 99 Mich. 433 (58 N. W. 366), this language was used:

"There was abundant evidence that the husband was an habitual drunkard, and it was unnecessary to show that the defendant knew it."

7. The proposition that there can be but one recovery on account of any injury arising under the statute is urged by appellant in connection with the fact that it appeared that the mother of these men had recovered a judgment against Miller.   We do not think it necessary to

discuss this point in view of our decisions. *Friend* v. *Dunks*, 37 Mich. 25, 28; *Rosecrants* v. *Shoemaker*, 60 Mich. 4, 7 (26 N. W. 794); *Larzelere* v. *Kirchgessner*, 73 Mich. 276 (41 N. W. 488); *Johnson* v. *Schultz*, 74 Mich. 75 (41 N. W. 865); *Thomas* v. *Dansby*, 74 Mich. 398 (41 N. W. 1088); *Boyden* v. *Haberstumpf*, 129 Mich. 137 (88 N. W. 386).

We have examined the other assignments of error as well as the record, including the charge of the court. We find no reversible error, and the judgment of the circuit court is affirmed.

HOOKER, MOORE, MCALVAY, and BROOKE, JJ., concurred.