GERMAIN *v.* LOUD.

1. SALES—LUMBER—CONTRACTS—DESTRUCTION.

Where plaintiff's decedent agreed to buy certain lumber from the defendant, and nothing was expressed in the correspondence as to the time when title should pass, but an inspection, to be paid for by both parties was required, and part of the lumber was delivered upon inspection, as agreed; the contract providing that decedent should take all the lumber of a quality described or named, and where the parties recognized in subsequent dealings that the lumber had all been sold and several letters passed in which they assumed that plaintiff was the buyer, and plaintiff advanced a considerable part of the purchase price, and where it appeared that the lumber had been piled separately, the vendee was not, as matter of law, entitled to recover advances made before it was burned, but the issue was one to be determined from all the acts of the parties and their dealings subsequent to the claimed sale.

2. SAME—EVIDENCE.

In the absence of a specific arrangement concerning the title to the property, in a contract of sale, the question whether title has passed is usually an issue of fact, to be determined from the acts done and promises made and from all the attendant circumstances.

3. SAME—QUESTION OF FACT—DIRECTED VERDICT—TRIAL—CONDUCT OF COUNSEL.

Both attorneys requesting the court to decide the issue as one of law, the trial judge did not err in determining the issue and in not submitting the point to the jury, although different inferences were admissible from the testimony.

Error to Saginaw; Gage, J. Submitted October 6, 1915. (Docket No. 17.) Decided December 21, 1915.

Assumpsit by Louise A. Germain, as executrix of the estate of Edward Germain, deceased, and another,

against Henry N. Loud and others, copartners, doing business as Henry N. Loud & Sons, for money had and received, etc. Judgment for defendants on a directed verdict. Plaintiffs bring error. Affirmed.

*Weadock & Weadock,* for appellants.

*Henry, Henry & Henry,* for appellees.

OSTRANDER, J. There was a contract between defendants, as vendors, and plaintiffs' decedent, as vendee, for the purchase and sale of certain lumber. The vendee made an advancement upon the purchase price. The lumber burned. The vendee sued to recover his advancement. The vendors claimed that the title to the lumber had passed to the vendee, and asked for a judgment for the balance of the purchase price. Upon the trial of the cause, both parties having rested, counsel for plaintiffs and counsel for defendants each moved for a peremptory instruction. The court thereupon said:

"I understand the position of the parties on both sides. The plaintiff in this case claims his position is that under the facts in this case it is purely a question of law for the judge, and it is the duty of the judge to direct a verdict for the plaintiff; and the defendant, on the other hand, contends that it is purely a question of law, and that it is the duty of the judge to direct a verdict for the defense on the conterclaim. If that is not your position, I want you to state it."

Counsel for both parties said that their position was as stated by the court. The court expressed the opinion that the question of the intent of the parties was involved, and was a proper question for a jury. At considerable length—the jury being absent—he went over portions of the testimony and referred to authority, concluding by saying:

"That is the reason I have suggested to you before that I thought that really this was a case for the jury,

and not the court. But, as you have put it up to the court, I am disposed to decide it."

The jury having returned into court, he instructed them to return a verdict for defendants, and in doing so said, among other things:

"After examining all the correspondence in this case, and the memorandum of agreement made and offered in evidence here, and all the testimony in the case, I am of the opinion that it was the intent of both parties that all the 4—4 lumber, Norway, and all the 5—4 Norway at Loud's mill was sold to Germain, and the consequence is that at that time it was the duty of the Louds, under the memorandum of agreement, to load that lumber on the cars, but it was for Germain to pay the freight and to pay for the lumber."

Much else was said by the court which makes it plain that he regarded the question to be decided as one of the intention of the parties, to be ascertained from all of the testimony. In this court the plaintiffs, appellants, affirm that:

"There is no evidence in the record that it was the intention of the parties that the title to the lumber in question would pass to the plaintiff Germain, until it had been inspected, the kind, quality, quantity, and price ascertained, and the lumber actually delivered f. o. b. cars Au Sable."

And in the reply brief say:

"We contended in the court below, and contend here, that upon the evidence the court should have directed a verdict for plaintiff; but if we were wrong in this position, and the court was satisfied that there was an issue of fact in the case which should be submitted to the jury, we insist it was his duty to submit such question to the jury, notwithstanding the attorneys for the respective parties did make the claim for their respective clients that the verdict should be directed in their favor. Notwithstanding the claims of counsel, the court still has a duty to perform according to its best judgment, and if the court was satisfied that the case should be submitted to the jury, it cannot justify

directing a verdict for the defendants, because the plaintiff, too, had asked a verdict directed for it. We now claim that if, on all the evidence in the case, this court should find there was a question of fact which should have been submitted to the jury, the judgment should be reversed."

The errors relied upon are based upon the charge and the direction of a verdict for defendants.

Unless the parties to a contract for the sale of personal property, not paid for and not delivered, have specifically agreed that the title thereto shall or shall not pass, the question whether title has passed to the buyer is one of intention, to be gathered from all the circumstances attending the bargain. It is a question of fact, to be answered by construction of whatever agreement was made. In construing the agreement of the parties, the courts indulge various presumptions, none of them conclusive, and it sometimes occurs, the terms of the contract and the acts of the parties with reference thereto and to the subject-matter being undisputed, that the courts are able to and do determine the question. Instances are: *Whitcomb* v. *Whitney,* 24 Mich. 486; *Carver* v. *Sherman,* 172 Mich. 264 (137 N. W. 519) ; *Tyler Lumber Co.* v. *Charlton,* 128 Mich. 299 (37 N. W. 268, 55 L. R. A. 301, 92 Am. St. Rep. 452). There is no occasion to attempt to restate or to amend the statements of the controlling rules found in *Lingham* v. *Eggleston,* 27 Mich. 324, and in *Byles* v. *Colier,* 54 Mich. 1 (19 N. W. 565).

In the case at bar, there was no specific agreement about the title to the lumber. The intention of the parties, a fact, is to be found in the terms of the bargain they made, the circumstances attending its making, and the acts of the parties. There is no occasion to set out in detail the history of the transaction. It covers a period of more than two years. Early in the year 1909 a contract was made for the purchase and sale of all of certain lumber, dry and in piles. Telephone

conversations regarding the arrangement occurred, but because of the death of Mr. Germain before trial what was said is not before us. For various reasons the lumber was not all of it shipped, and some of it was sold to other parties by the vendors, with the approval and presumably by the direction of the vendee. But, repeatedly, both parties to the agreement recognized the fact that the lumber, the quantity having been estimated, was sold to Mr. Germain. In 1911, under date of February 6th, a writing was made, signed by both parties, reading as follows:

"To H. M. Loud Sons' Company:

"Agreeable to conversation we had with Mr. E. F. Loud, we learned that there is still about 80,000 feet or less of 4—4 Norway and tamarack, about 167,000 5—4 Norway, with a small percentage of tamarack, at the mill left unshipped on purchase made some time ago, which was purchased 'at the price $14 for the common and better Norway, $10 for the culls, Norway, and $12 common and better tamarack, and $8 for the culls—above prices f. o. b. Au Sable, Michigan. We agree to pay $2,000 on or before May 1, 1911, and balance to be paid on or before June 1, 1911, and, if lumber is not all shipped, settlement to be made based on average value of lumber, based on the above prices, and final adjustment to be made when lumber is all shipped. It is also understood that we will use our very best efforts to ship this lumber at an early period. In the event of lumber being moved, payment to be made on 10th of month following, net."

An inspector was agreed upon, and he inspected whatever lumber was shipped after this agreement was made; each party paying one-half the inspection fees. Evidence of the intention of the parties is to be found in the agreement above set out, and in the fact that it was made after the vendor had insisted upon some completion of the original agreement. Under date of January 13, 1910, the vendors (defendants) had written to the vendee (plaintiffs' decedent) as follows:

"Last March we entered your order for all the 4—4 and 5—4 Norway which we had in stock at that time. This order included the 4—4 and 5—4 tamarack that was filled in with the Norway. On this order we shipped 107,345 feet of 4—4 and 99,774 feet of 5—4. There still remains unshipped, as near as we can estimate, 216,000 4—4 and 167,000 of 5—4. You stopped us shipping in May last, and, although we have repeatedly asked that you allow us to resume shipment, you have for one reason or another refused to allow us to do so. We have for a long time felt that you were abusing our good nature in this matter, and, while we have tried to have patience, we have arrived at a point where we feel that something must be done. We must either have a check for the lumber, or you must take it in at once. Otherwise we must take some steps to obtain our rights, whatever they may be. Please let us hear from you at once, and oblige."

No objection was made to the recitals contained in this letter, but the answer, dated January 22, 1910, was:

"Replying to yours of the 13th, regarding the 4—4 and 5—4 Norway and tamarack, which you have for us, beg to ask what percentage of tamarack there is in this stock, and when the lumber was shipped, and, would you be willing to separate the Norway from the tamarack in loading? We understand from your letter that the 216,000 feet of 4—4 and 176,000 feet of 5—4 covers both the Norway and tamarack."

There was further correspondence. The vendors again insisted upon shipping orders, conversations were had, and finally the written memorandum of agreement was made. Under date May 29, 1911, the vendee paid the $2,000. Further evidence of the intention of the parties appears. The original order given by the vendee was for all of the lumber described in a memorandum made by the vendors' agent and submitted to Mr. Germain. The estimated quantity was stated. This lumber was piled separately from other lumber—was identified. Before February 6, 1911, the

vendee had received and paid for a considerable quantity of it. He therefore knew its quality. What remained to be done, after February 6, 1911, was to inspect the remainder as it was loaded upon cars, and, if it was not shipped, it was nevertheless to be paid for by the vendee, as per the memorandum of agreement. Prices had been agreed upon; an inspector mutually selected. Nothing was left to further agreement; nothing but to load the lumber as it was called for by the vendee was to be done by the vendors.

I am of opinion, therefore, that there was evidence that it was the intention of the parties that it was understood and agreed that title to the lumber passed to the vendee and that the understanding was mutual before and after February 6, 1911. While, perhaps, different minds might be differently affected by the testimony which is substantially undisputed—different minds might draw different inferences—counsel for both parties requested the court to decide the controlling question, and it was not error for the court to do so. *Culligan* v. *Alpern*, 160 Mich. 241 (125 N. W. 20). Whether we say it was decided as a question of law or one of fact is not very material. Counsel for appellants insists here that a verdict should have been directed for his clients. That it would have been error to do so, I have sufficiently pointed out.

The judgment is affirmed.

BROOKE, C. J., and PERSON, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.