## LONG v. DUDEWICZ.

1. TRIAL—MOTIONS FOR DIRECTED VERDICT BY BOTH PARTIES.

   The trial court properly dismissed the jury and determined both the issues of fact and law, where both parties had asked for a directed verdict, hence, plaintiff may not thereafter complain that there was an issue of fact for the jury.

2. APPEAL AND ERROR—MOTIONS FOR DIRECTED VERDICT BY BOTH PARTIES—QUESTIONS REVIEWABLE.

   The matter for determination by the Supreme Court on appeal from order granting defendant's motion for directed verdict is whether or not there was evidence from which the trial judge could find for the defendant, where at close of plaintiff's case both parties had moved for a directed verdict.

3. INTOXICATING LIQUORS—UNLAWFUL SALE—PROXIMATE CAUSE OF INJURY—NEGLIGENCE OF MOTORIST.

   The matter at issue in an action under the civil damage act is whether there was an unlawful sale of intoxicating liquor to an adult person which proximately caused plaintiff's injury, not whether the person to whom the sale of liquor was made was negligent in the operation of his car by driving it at such speed as not to be able to stop it within the assured clear distance ahead (CLS 1956, § 436.22).

4. SAME—EVIDENCE OF INTOXICATION.

   The fact that intoxicating liquor was consumed by driver of the car in which plaintiff was a passenger when it collided

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial §§ 341–346.
    Request by both parties for directed verdict as waiver of submission to jury. 18 ALR 1433, 69 ALR 633, 108 ALR 1315.
[2] 53 Am Jur, Trial § 354.
[3] 30 Am Jur, Intoxicating Liquors §§ 525, 541–543.
[4, 6] 30 Am Jur, Intoxicating Liquors §§ 541–543.
[5] 53 Am Jur, Trial §§ 341–346.

with railroad signal-light post in center of street at 3 a.m. on New Year's Day is not sufficient to establish intoxication at the time of or immediately prior to the accident, as such conclusion does not follow from the fact that an accident happened, so as to impose liability upon tavern keeper for an illegal sale of intoxicating liquor to an adult person in violation of the civil damage act (CLS 1956, § 436.22).

5. Trial—Motions for Directed Verdict by Both Parties—Determination of Fact—Credibility of Witnesses—Inferences.

A trial court, after both parties have moved for a directed verdict, has the duty to pass on the credibility of the witnesses, to make inferences from the established facts, to believe or disbelieve the witnesses, and to otherwise determine the true facts.

6. Intoxicating Liquors—Proximate Cause—Evidence—Finding of Trial Court.

Trial court's finding that there was no intoxication which had a causal relationship to accident in which injuries were inflicted upon plaintiff in action under civil damage act *held*, supported by facts, notwithstanding the large consumption of liquor over the preceding several hours of New Year's Eve and morning (CLS 1956, § 436.22).

Appeal from Saginaw; Fenlon (Edward H.), J., presiding. Submitted January 7, 1959. (Docket No. 14, Calendar No. 47,143.) Decided February 20, 1959.

Case by Peggy Long against Peter F. Dudewicz, doing business as The New Apple Orchard, under civil damage provision in liquor laws, for injuries sustained when car in which she was a passenger struck a signal post. Judgment for defendant. Plaintiff appeals. Affirmed.

*Angelo E. Trogan* (*Ryan, Doozan & Scorsone,* of counsel), for plaintiff.

*Stanton & MacKenzie* (*H. Monroe Stanton,* of counsel), for defendant.

KAVANAGH, J. This is a cause of action under the civil damage act (CLS 1956, § 436.22 [Stat Ann 1957 Rev § 18.993]), based upon the alleged statutory liability of defendant, owner and operator of a liquor bar on M-13, south of the city of Saginaw.

Plaintiff claims damages for injuries suffered on January 1, 1955, when she was a passenger in an automobile owned and driven by Edwin Reppuhn. She was one of a group who drove in Reppuhn's automobile to defendant's tavern near Saginaw, arriving there shortly before 12 o'clock on New Year's Eve.

Plaintiff and her escort did not enter the tavern, he being refused admission because he was not 21 years of age. They remained outside in the automobile while Reppuhn, his wife and another couple entered the tavern and remained there until approximately 2:30 a.m.

Plaintiff claims that Reppuhn was sold intoxicating liquor by the defendant, owner of the tavern, and his agents while Reppuhn was in an intoxicated condition, in violation of the statute; that as a result of this violation of the statute, Reppuhn, while driving at about 3 a.m. on the main street in Birch Run, taking Nancy Fent, one of the party, to her home, struck a railroad signal-light post which was located in the center of the paved street. The injury to the plaintiff resulted.

The burden of proof was on plaintiff to show that Reppuhn was an intoxicated person to whom intoxicating liquor was sold by the defendant or his agents; that as a result of this sale Reppuhn was, and continued, intoxicated until the time of the accident; and that such intoxication was the cause or contributing cause of the injury.

The case was tried to a jury. At the close of plaintiff's proofs defendant moved for a directed verdict. After some discussion between counsel and

the trial judge, plaintiff made a motion for a directed verdict as follows:

"May it please the court, the plaintiff has rested in this case, as has the defendant. The defendant, without reservation, made a motion for a directed verdict. At this time the plaintiff, without reservation, makes a motion for a directed verdict on the part of the plaintiff."

The court filed a written opinion granting defendant's motion of no cause of action and an order was accordingly entered. New trial was requested. A written opinion denying the motion for new trial was followed by an order of denial. Plaintiff appeals to this Court.

We do not have the usual case of a motion by defendant for a directed verdict or a motion *non obstante veredicto,* but a situation where both parties unconditionally asked for a directed verdict in their favor. Both parties having asked for a directed verdict, counsel cannot now complain that there was an issue of fact for the jury. The court properly dismissed the jury and considered both the issues of fact and law. Plaintiff, the loser in this case, cannot renege. *St. Mary's Power Co.* v. *Chandler-Dunbar Water-Power Co.,* 133 Mich 470; *Culligan* v. *Alpern,* 160 Mich 241; *Germain* v. *Loud,* 189 Mich 38; *Kyselka* v. *Northern Assurance Co.,* 194 Mich 430; *City National Bank* v. *Price's Estate,* 225 Mich 200; *West* v. *Newton,* 229 Mich 68; *Mills* v. *Anderson,* 238 Mich 643.

In the case of *City National Bank* v. *Price's Estate,* 225 Mich 200, 212, Justice Steere, writing for the Court, said:

"While there may be room for conflicting inferences from this testimony, both parties without reservation requested a directed verdict and put it up to the court to pass upon whatever the record

presented. There was, therefore, no error in the court's assuming to do so. *Culligan* v. *Alpern,* 160 Mich 241; *Germain* v. *Loud,* 189 Mich 38; *Kyselka* v. *Northern Assurance Co.,* 194 Mich 430."

In *Kyselka* v. *Northern Assurance Co.,* 194 Mich 430, 439, 440, Justice BROOKE, writing for the Court, said:

"In the light of the dialogue which occurred between the court and counsel for both parties at the conclusion of the case, we are of opinion that counsel cannot now complain even if in the determination by the court a question of fact was involved. *Culligan* v. *Alpern,* 160 Mich 241; *Germain* v. *Loud,* 189 Mich 38."

A similar situation to the instant case is reported in *Germain* v. *Loud,* 189 Mich 38, where Justice OSTRANDER said (p 44):

"While, perhaps, different minds might be differently affected by the testimony which is substantially undisputed—different minds might draw different inferences—counsel for both parties requested the court to decide the controlling question, and it was not error for the court to do so. *Culligan* v. *Alpern,* 160 Mich 241."

We find the lower court in this instance, in view of the motions of both counsel, acting at the conclusion of proofs in the same capacity he would have acted had the case been tried before him without a jury.

In our review on this appeal we find ourselves in the position of determining whether or not there was evidence from which the trial judge could find for the defendant.

There appears to be complete agreement of all witnesses with reference to material facts up until the time the party arrived at the New Apple Orchard tavern shortly before midnight.

Reppuhn and Martin Engelhardt worked together on December 31, 1954, and at about 5 p.m. on that day Reppuhn had 2 shots of whiskey. Shortly thereafter the two of them went to South Saginaw, picked up some clothes and went to a tavern where they each had 2 glasses of beer. Leaving this tavern, they went to Martin Engelhardt's house where Reppuhn had a bottle of beer. Between 8:30 and 9:30 p.m. Reppuhn drove to Birch Run to pick up Nancy Fent. He then returned to his own house. After eating a sandwich and changing clothes he, his wife, Nancy Fent and Martin Engelhardt proceeded to plaintiff's house in Reppuhn's car. While at plaintiff's house Reppuhn drank another bottle of beer. Between 11 and 11:30 in the evening plaintiff and her escort, Richard Christian, joined the other four in Reppuhn's car and drove to the New Apple Orchard where they were to celebrate the New Year.

All testified that while at the New Apple Orchard Reppuhn drank several bottles of beer. Reppuhn testified that he drank about 8 or 9 bottles. Martin Engelhardt testified that he drank 7 or 8 bottles of beer during the time that he was present in the tavern; that he observed Edwin Reppuhn after Edwin had had some drinks at the New Apple Orchard, and at about 1:30 or a quarter to 2 he noticed a change in Edwin Reppuhn—he was louder, talked different. He jabbered. He didn't bring out his words as plain as he usually did, and he "kind of staggered." On cross-examination, however, he testified that where he saw Edwin Reppuhn stagger was on the dance floor; that the dance floor was crowded and people were pushing each other; and that it was difficult to get through to the floor.

Nancy Fent indicated that the only change she noticed in Edwin Reppuhn during the course of the evening at the New Apple Orchard was: "He just talked more, maybe, toward the end."

Plaintiff, Peggy Long, testified that in traveling from her house to the New Apple Orchard Mr. Reppuhn was driving the car, and at that time, in her opinion, he was not under the influence of intoxicating liquor.

It is further agreed by all of the witnesses that, upon leaving the tavern around 2:30 a.m., Edwin Reppuhn drove the car the approximately 10 miles distance from the New Apple Orchard tavern to Birch Run where the accident took place. It was testified that soon after he left the tavern Nancy Fent believed he was driving too fast and asked Martin Engelhardt to tell him to slow down. When Engelhardt asked him to do so he immediately obeyed. On one occasion Martin Engelhardt became ill. Reppuhn stopped the car for Engelhardt to get out and waited about 5 minutes for him. He then drove the rest of the distance to Birch Run.

Nancy Fent testified that she was familiar with this road, that it is a narrow, winding road with about 6 or 7 curves between the New Apple Orchard and the place of the accident, one curve leading to a narrow bridge. She testified that Edwin did not have any trouble in driving, excepting as shown by his excessive speed.

Exhibits were introduced at the trial showing the narrowness of the road and, particularly, the long, narrow bridge over which Edwin Reppuhn was required to drive.

Plaintiff testified that after she left the tavern the only time she heard anybody complain about Reppuhn's driving was when he was asked to slow down.

Edwin Reppuhn testified that this road is quite winding, having about 8 or 9 separate turns; that the road is only about 18 feet wide; that the bridge is only about 14 feet wide; that as he approached the signal light in the center of the main street in Birch Run, at the railroad track, there was ice and

snow on the road; that there was ice on the narrow road on which he had been driving, but it was not as bad as in Birch Run. He further testified that just before the accident he skidded on the ice while going about 35 miles per hour.

Reppuhn was asked how many hours he had been up. He testified he had been up over 20 hours and he was sleepy. He further testified:

"*Q.* Could you tell the court and jury, Mr. Reppuhn, what caused the accident? * * *

"*A.* I would say that I had too much to drink."

On cross-examination Reppuhn was asked the following questions and gave the following answers:

"*Q.* You have some interest in this lawsuit, don't you?

"*A.* Yes, sir.

"*Q.* What is that interest?

"*A.* I don't get what you mean by that.

"*Q.* You want Peggy Long to win this lawsuit, don't you? You have some interest in it, don't you?

"*A.* Yes.

"*Q.* As a matter of fact, your wife has got a lawsuit against Mr. Dudewicz?

"*A.* Yes, sir.

"*Q.* And Martin Engelhardt has a lawsuit against Mr. Dudewicz?

"*A.* I don't know about that."

The lower court found that there was no manifestation by the actions of Edwin Reppuhn that he was intoxicated while at the defendant's place of business, or that he was sold intoxicating beverages by the defendant or his agents while he was intoxicated. The only evidence of Mr. Reppuhn's intoxication is given by Martin Engelhardt, and he concedes that he was under the influence of liquor. The only evidence that he saw of any intoxication of Mr. Reppuhn was that as the evening progressed he talked

louder than he had previously and that he staggered. Under cross-examination, he admitted that after midnight everyone became more noisy, celebrating New Year's Eve, than they had previously been. He testified that, inasmuch as the dance floor and the premises were very crowded, the staggering could have been caused because Mr. Reppuhn was bumped or pushed by someone else during the festivities.

Appellant contends that she sustained the burden of proof and that the law applied to the undisputed facts does not support the judgment of the trial court. She alleges that the court erred in finding that there was no unlawful sale of intoxicating liquor.

Appellant cites the case of *Cook* v. *City of Otsego,* 282 Mich 248, for authority that, as a matter of law, the driver of the car was negligent in running into the signal post.

This action is not brought upon the theory of negligence, nor upon the statutory duty of the driver of an automobile to drive in such a manner as to be able to stop within the assured clear distance ahead, but, rather, brought under CLS 1956, § 436.22 (Stat Ann 1957 Rev § 18.993), which places a duty upon a retailer of alcoholic liquor not to directly or indirectly sell, furnish, give or deliver any alcoholic liquor to an adult person who is at the time intoxicated. Therefore, *Cook* v. *City of Otsego, supra,* is not applicable to the instant case.

Appellant contends that under the authority of *Higdon* v. *Kelley,* 339 Mich 209, it was not necessary for plaintiff to prove that Edwin Reppuhn was "dead drunk" or "hopelessly drunk." In addition to showing consumption of 10 or 12 glasses of beer in the *Higdon* v. *Kelley Case,* there was further testimony which showed that Robinson was mumbling and was using foul and abusive language prior to the attack. The doctor at the hospital stated that he showed

signs of intoxication when he was brought there. Justice BUTZEL, writing for the Court, said (pp 214, 215):

"We believe that there was sufficient evidence to show that Robinson became intoxicated, that he was served with beer while in that condition, and that his wrongful conduct caused the death of plaintiff's decedent."

He concluded on this subject (p 215):

"While there may be a close question of fact in the case, nevertheless we cannot say that the verdicts were against the great weight of the testimony."

Justice CARR, in writing in *Wyatt v. Chosay,* 330 Mich 661, 670, said:

"The primary question at issue in the case at bar is whether there was competent testimony on which the jury might base a conclusion that the accident was caused by negligent conduct on the part of Wackerle, resulting wholly or in part from intoxication brought about by defendant Chosay's acts in selling and furnishing liquor to Wackerle. The fact that the liquor was consumed is not sufficient to establish intoxication at the time of, or immediately prior to, the accident. Such conclusion does not follow from the fact that an accident happened. *Nylund v. Gemo,* 295 Mich 75; *People v. Weaver,* 188 App Div 395 (177 NYS 71)."

We cannot say that the trial court erred in holding that there was no showing of intoxication or selling to an intoxicated person which would be a force and influence out of which fault might arise. No causal relationship has been proven between the sale of intoxicating liquors and the cause of the accident. The acts of Edwin Reppuhn from the time he left the New Apple Orchard tavern do not appear to have been those of an intoxicated person. After

leaving the tavern Reppuhn drove 10 miles over a narrow, winding road, on which there was ice, an extremely narrow bridge only 14 feet wide, and, also, where there was some evidence that there was some fog in spots. Nowhere is there any evidence that Edwin Reppuhn had any difficulty in driving this road, with the one exception when he started out from the tavern. At this time he was cautioned about going too fast. He was requested to slow down, which he did without any argument. When Martin Engelhardt became ill Edwin Reppuhn stopped his automobile without arguing. After having waited several minutes he continued on until the point of the accident. During that time Nancy Fent carried on an intelligent conversation with Edwin Reppuhn. She testified that he was apparently normal.

The lower court observed the witnesses, observed their conduct on the witness stand, and listened to their testimony. He was the person selected by the plaintiff in making the motion for a directed verdict to be the judge of the facts and law. It was the lower court's duty to pass on the credibility of the witnesses, to make inferences from the established facts, to believe or disbelieve the witnesses, and to otherwise determine the true facts. There was a jury present and plaintiff could have allowed this jury to make the determination of facts, but plaintiff did not elect so to do.

Certainly there were facts from which the trial judge could believe that, despite the large consumption of liquor over the preceding several hours, there was no intoxication which had a causal relationship to the accident. It is possible the trial judge believed the story of Edwin Reppuhn that immediately before the accident he hit a patch of ice and skidded on the ice causing the accident. There was ample evidence for the trial judge to reach the conclusion he did.

The judgment is affirmed, with costs to appellee.

Dethmers, C. J., and Carr, Kelly, Smith, Black, Edwards, and Voelker, JJ., concurred.