Levin, J.
 

 Julius E. Beres, defendant and third-party plaintiff, appeals an accelerated judgment dismissing his third-party complaint.
 
 [1]
 
 "We reverse and hold that a tavern owner sued under the dram-shop act
 
 [2]
 
 may properly implead and seek contribution from another tavern owner claimed to have made a sale unlawful under that act causally connected with the plaintiff’s injury.
 

 
 *321
 
 I.
 

 The Exception for Joint Tort-Feasors to the General Duty to Make Contribution
 

 As an exception to the general principle that those who have a common liability should share it equally, and to that end one paying more than his aliquot share may enforce contribution from others so liable,
 
 [3]
 
 the rule developed that so-called joint tortfeasors have no contribution liability one to another.
 
 [4]
 
 That exception has now been eliminated, at least as to negligent tort-feasors, in most jurisdictions, either by statute or judicial interpretation.
 
 [5]
 

 n.
 

 The Michigan Statute Providing eor Contribution Among Tort-Feasors and Impleader Pursuant to the 1961 General Procedural Revision
 

 PA 1941, No 303, concerning contribution among and release of tort-feasors, provided (§1) that “whenever a money judgment has been recovered jointly against 2 or more defendants” in an action for personal injury or property damage, each defendant who paid more than his pro rata share “shall be entitled to contribution” from the other defendants.
 
 [6]
 

 
 *322
 
 As part of the recent general procedural revision, a third party practice was established for Michigan in GrCR 1963, 204. The rule authorizes
 
 [7]
 
 the court to permit a defendant to file as third party plaintiff a complaint against a person “who is or may thereafter be liable to such third party plaintiff by right of contribution, or otherwise, for all or part of the plaintiff’s claim against him.”
 

 Rule 204 does not, however, create substantive rights. The substantive basis for an impleader must be found elsewhere in principles of indemnity, subrogation, contribution, warranty, or other right.
 
 [8]
 

 So that the right to seek contribution should no longer depend on whether the plaintiff saw fit to sue both tort-feasors,
 
 [9]
 
 and as part of the general proce
 
 *323
 
 dural revision, tbe following language was added to tbe 1941 statute providing for contributiob among and release of tort-feasors (wbicb, as so amended', became EJA, § 2925):
 

 “Joint
 
 tort-feasors who are summoned in as third party defendants pursuant to court rule may likewise be liable for contribution.”
 
 [10]
 

 III.
 

 Dramshop Owners are Under a Common Burden oe Liability
 

 Contribution may be enforced, however, only among persons whose equities are equal. That requirement is satisfied when the parties are under a common burden, obligation or liability to the plaintiff, statutorily or otherwise imposed or assumed.
 
 [11]
 

 In this case, both the claim asserted by the plaintiffs against the third-party plaintiff and that as
 
 *324
 
 serted by the third party plaintiff against the third party defendant arise under a common theory of liability to the plaintiffs. It is asserted that both the third-party plaintiff and third-party defendant made sales to the allegedly intoxicated person after he became intoxicated, sales that were causally connected with plaintiff’s injuries.
 

 If this is true, if violations of the dramshop act by both the third-party plaintiff and the third-party defendant contributed to plaintiffs’ loss, then plaintiffs may recover all their damages from either of them.
 
 Franklin
 
 v.
 
 Frey
 
 (1895), 106 Mich 76, 77, 78;
 
 Larabell
 
 v.
 
 Schuknecht
 
 (1944), 308 Mich 419, 423. Thus would arise a common burden of liability under the dramshop act on the part of both tavern owners, and distinguishes this case from
 
 Virgilio
 
 v.
 
 Hartfield
 
 (1966), 4 Mich App 582.
 

 Both
 
 Franklin
 
 v.
 
 Frey, supra,
 
 and
 
 Larabell
 
 v.
 
 Schuknecht, supra,
 
 refer to tavern owners whose separate violations of the dramshop act cause one injury as
 
 “joint
 
 tort-feasors.”
 
 [12]
 
 Tavern owners appear then to be within the coverage of the statute which, as amended (BJA, § 2925), declares that
 
 joint
 
 tort-feasors summoned in as third party defendants may be liable for contribution.
 

 IV.
 

 The Holding in Geib v. Slater
 

 But for
 
 Geib
 
 v.
 
 Slater
 
 (1948), 320 Mich 316,
 
 [13]
 
 there would be little more that need be said. However, in that case the Court considered § 2 of the original
 
 *325
 
 statute providing for contribution among and release of tort-feasors, and ruled that a release of one tort-feasor operates to discharge another if their independent, concurring acts of negligence combined to cause the plaintiff’s loss, because such tort-feasors are not
 
 joint
 
 tort-feasors.
 

 Historically, the
 
 Geib
 
 v.
 
 Slater
 
 Court was correct. Only those torts committed by feasors who both
 
 consented
 
 to the enterprise and whose
 
 concerted
 
 actions in its performance resulted in plaintiff’s injury could be held
 
 jointly.
 

 “The original meaning of a ‘joint tort’ was that of vicarious liability for concerted action. All persons who acted in concert to commit a trespass, in pursuance of a common design, were held liable for the entire result.” Prosser, Law of Torts (3d ed), p 258. See, also, 1 Harper and James, The Law of Torts, § 10.1, p 692.
 

 Geib
 
 relied on
 
 Frye
 
 v.
 
 City of Detroit
 
 (1932), 256 Mich 466, which had earlier declared that independent wrongdoers were not “joint tort-feasors.”
 

 The tavern owners are independent, and not concerted tort-feasors. It is claimed that their independent, nevertheless concurring, acts of negligence caused one injury. Thus, under
 
 Geib
 
 v.
 
 Slater
 
 the tavern owners are not “joint tort-feasors” and, if that be so, the substantive justification for contribution cannot be predicated upon PJA, § 2925.
 

 The fact that the term “joint tort-feasor” has, as the
 
 Geib
 
 Court observed (p 321), “frequently been used carelessly,”
 
 [14]
 
 is a reason to avoid an esoteric meaning, rather than to adopt it. Perhaps “carelessly”, but, nevertheless, properly in the ordinary lexicon of the profession, the Michigan Supreme Court has frequently referred to independent wrongdoers whose breach of a common duty or coneur
 
 *326
 
 ring acts of negligence produced 1 injury as joint tort-feasors.
 
 [15]
 

 Nor should it be supposed that those who draft remedial statutes or amendments thereto are paragons.
 
 [16]
 

 
 *327
 

 Frye
 
 v.
 
 City of Detroit, supra,
 
 relied upon in
 
 Geib,
 
 lias been considerably restricted. See the opinions of the Court and Mr. Justice Black’s concurrences in
 
 Maddux
 
 v.
 
 Donaldson
 
 (1961), 362 Mich 425, 449, and
 
 Meier
 
 v.
 
 Holt
 
 (1956), 347 Mich 430, 436, 446.
 
 [17]
 

 Geib’s
 
 result is somewhat ironic.
 
 [18]
 
 The rules that contribution is not available among independent,
 
 *328
 
 concurring, negligent tort-feasors and that a release of one tort-feasor discharges the other are generally thought to have come about because of the kind of careless usage of the term
 
 joint
 
 tort-feasor referred to in
 
 Geib.
 
 Both rules date to a time when only concerted wrongdoers could be sued jointly.
 

 Following procedural reforms in this country permitting' joinder in one action of independent, concurrent tort-feasors, the courts for the most part, without considering the differing policies that might be involved, uncritically adopted the rules regarding contribution and release of concerted, intentional wrongdoers and applied them to independent, concurrent, negligent wrongdoers who could now be held in one action jointly.”
 
 [19]
 

 “The half truths of one generation tend at times to perpetuate themselves in the law as the whole truth of another, when constant repetition brings it about that qualifications, taken once for granted, are disregarded or forgotten.” per Cardozo, J. in
 
 Allegheny College
 
 v.
 
 National Chautauqua County Bank of Jamestown
 
 (1927), 246 NY 369, 373 (159 NE 173).
 

 To restrict the definition of joint tort-feasors in this remedial legislation to its 18th century meaning is to protect those against whom the rules were
 
 *329
 
 originally erected
 
 [20]
 
 and yet leave governed by such, rules those who, but for the “careless usage” referred to in
 
 Geib,
 
 may never have been covered thereby.
 

 ■
 
 Geib’s
 
 express holding can be avoided by the covenant not to sue expedient.
 
 [21]
 
 However, there is no similar escape hatch in the law of contribution.
 
 Geib
 
 should be overruled.
 
 [22]
 
 '
 

 Having explained why we cannot simply, on the authority of
 
 Franklin
 
 v.
 
 Frey, supra,
 
 and
 
 Larabell
 
 v.
 
 Schuknecht, supra,
 
 declare that the third-party plaintiff and the third-party defendant here are
 
 *330
 
 joint tort-feasors and, therefore, contribution may be allowed under RJA, § 2925, we turn to a disposition of this case which we think both sound and within our authority and which makes it unnecessary for us to decide whether
 
 Geib
 
 v.
 
 Slater
 
 bars implead or by one tort-feasor of another in a case where it is claimed their independent acts of negligence concurred to cause one indivisible injury (see footnote 22).
 

 V.
 

 The General Principle that There is a Duty op Contribution Should be Applied Where the Tort-Feasors’ Liability Does Not Depend Upon Proop op Wrongdoing
 

 The exception to the general rule of contribution for so-called joint tort-feasors goes back to
 
 Merriweather
 
 v.
 
 Nixan
 
 (1799), 8 TR 186 (101 Eng Rep 1337). In that case the wrongdoers by concerted action intentionally inflicted injury.
 
 [23]
 
 As previously explained, the distinction between concerted and independent wrongdoers, and between intentional and negligent wrongdoers, was generally lost sight of when the doors were thrown open to joinder in one action of all those who caused the indivisible injury. The result was that most courts, including our Supreme Court (see footnote 4), applied the rule denying contribution to both negligent and intentional wrongdoers.
 
 [24]
 

 
 *331
 
 It has been said that at common law serving liquor to an able-bodied man was not unlawful.
 
 [25]
 
 Be that as it may, the basis of liability asserted against the defendant tavern owners is purely statutory and does not depend on proof of intentional wrongdoing or negligence. However careful a tavern owner may be, if he makes an unlawful sale that contributes to plaintiff’s injury he is fully liable therefor.
 
 [26]
 

 The exception denying the remedy of contribution to intentional and negligent wrongdoers need not be extended to a case such as this where liability arises independently of fault (see authorities referred to in footnote 24). Whatever public policy was once thought to be offended by providing a forum for the settlement of disputes between intentional and negligent wrongdoers cannot justifiably be applied to those, like tavern owners, who, regardless of the care they exercise and their freedom from moral wrongdoing, are, for the better protec
 
 *332
 
 tion of society, declared responsible as a matter of law.
 

 We, therefore, hold the rule of
 
 Merriweather
 
 v.
 
 Nixan, supra,
 
 barring contribution inapplicable to the defendant tavern owners because their' liability does not depend on proof of intentional or negligent wrongdoing and arises without regard to the care they exercise to avoid it.
 
 [27]
 

 VI.
 

 The Statute of Limitations Does Not Begin to Run Until Payment by the One Seeking Contribution
 

 The defendant’s assertion that the third-party complaint is barred by the dramshop act’s 2-year statute of limitations is without merit. On the ground that the cause of action for contribution does not arise until payment, it generally has been held that a suit for contribution is not barred by the
 
 *333
 
 running of the statute of limitations against the original plaintiff’s action.
 
 [28]
 

 VII.
 

 Certain Cases Relied on by the Third-Party Defendant
 

 The principle reiterated in
 
 Kangas
 
 v.
 
 Suchorski
 
 (1964), 372 Mich 396, denying recovery under the dramshop act to the intoxicated person on the ground that he is not an innocent party does not bar contribution among tavern owners. A tavern owner’s legal responsibility to tbe
 
 plaintiff
 
 does indeed arise under tbe dramshop act. But in seeking contribution from another tavern owner, a tavern owner does not rest his case on tbe dramshop act, as did tbe intoxicated person in
 
 Kangas.
 
 Rather, be relies on tbe fundamental principle that where 2 or more persons share a common duty or obligation one who pays more than bis share of tbe damages may enforce contribution from others who have not responded with their share. For tbe same reason, that tbe third-party plaintiff does not rest bis case on tbe dramshop act, but rather seeks to enforce tbe principle of contribution,
 
 Holland
 
 v.
 
 Eaton
 
 (1964), 373 Mich 34, concerning tbe dramshop act’s special statute of limitations, is inapplicable.
 

 
 *334
 
 Whether both the third-party plaintiff and the third-party defendant sold to the allegedly intoxicated person when he was in that state and snch sales contributed to plaintiffs’ loss
 
 [29]
 
 is, of course, yet to be determined.
 

 Reversed and remanded. The third-party complaint is reinstated. Costs to appellant.
 

 T. G-. Kavanagh, P. J., and Vander Wal, J., concurred.
 

 [1]
 

 This action was commenced on March 20, 1964, by James Duncan and Nationwide Mutual Insurance Company against Julius E. Beres, individually and doing business as Tonina’s Bar, Mildred McArthur, individually and doing business as Miekie’s Cocktail Lounge, and Edward Bushlow, jointly and severally, alleging damage to the plaintiffs resulting from sales by Beres and McArthur to Bushlow on March 22, 1962, in violation of the dramshop act. Beres filed his appearance and answer. Duncan and Nationwide did not succeed in serving McArthur. On November 23, 1964, the trial judge signed an order authorizing Beres to file a third party summons and complaint against McArthur pursuant to GCB 1963, 204. The third party eomplaint was filed on December 3, 1964, wherein Beres sought contribution or indemnification from McArthur in the event the plaintiffs recover against Beres. On February 17, 1965, McArthur moved for accelerated judgment, contending that the third party complaint was barred by the 2 year statute of limitations set forth in the dramshop act; she later added as additional grounds for such motion, among others, that Beres and McArthur were
 
 not
 
 joint tortfeasors and so there could be no right of contribution between them. The trial judge granted the motion for accelerated judgment without stating which of the several reasons advanced in support of the motion had persuaded him.
 

 [2]
 

 CLS 1961, § 436.22; CL 1948, § 436.29 (Stat Ann 1968 Cum Supp § 18.993; 1957 Bev § 18.1000). It appears the term “dramshop” can be traced to temperance efforts. Laws were enacted in several states prohibiting the sale of liquor exeept in large quantities, between 15 and 28 gallons. The term “dramshop” eame to describe those establishments where liquor could be sold in measured quantities of less than a gallon. McGough, Dramshop Acts, 1967 Proceedings, Section of Insurance, Negligence and Compensation Law, American Bar Association, p 448.
 

 [3]
 

 18 Am Jur
 
 2d,
 
 Contribution,
 
 §4;
 
 Restatement, Restitution, §81
 
 et seq.; Ellis
 
 v.
 
 Phillips
 
 (1961), 363 Mich 587, 598.
 

 [4]
 

 Village of Portland,
 
 v.
 
 Citizens Telephone Co.
 
 (1919), 206 Mich 632, 636;
 
 Township of Hart
 
 v.
 
 Noret
 
 (1916), 191 Mich 427, 432;
 
 Hoek
 
 v.
 
 Township of Allendale
 
 (1910), 161 Mich 571, 581;
 
 Smith
 
 v.
 
 Ayrault
 
 (1888), 71 Mich 475, 483;
 
 Upham
 
 v.
 
 Dickinson
 
 (1878), 38 Mich 338, 340; Restatement, Restitution, § 102, but see preceding sections.
 

 [5]
 

 18 Am Jur 2d, Contribution, §§ 34, 40, 41.
 

 [6]
 

 Section 2 of the same statute provided that a release of 1 or more
 
 “joint
 
 tort-feasors” would no longer bar an action against other joint tort-feasors. The term “joint tort-feasors” so used in
 
 *322
 
 § 2 of the statute, concerning releases, did not appear in § 1 of the statute, concerning contribution, when it was originally enaeted. The term was later added to § 1 as part of the general procedural revision which resulted in the enactment of the revised judicature act and the promulgation of the general court rules of 1963. (See text accompanying footnote 9.)
 

 That prior to the adoption of the statute the release of 1 joint tort-feasor released the other, see
 
 McBride
 
 v.
 
 Scott
 
 (1903), 132 Mich 176;
 
 MacDonald
 
 v.
 
 Henry Hornblower & Weeks
 
 (1934), 268 Mich 626, 629.
 

 [7]
 

 A motion to implead is addressed to the trial judge’s “sound judicial discretion,” see concurring opinion in
 
 Busted
 
 v.
 
 Consumers Power Co.
 
 (1965), 376 Mich 41, 57.
 

 In the instant ease the question of the extent of the trial judge’s sound judicial discretion to deny impleader where contribution is sought does not arise, as the filing of the third party complaint was authorized by the trial judge. See 1 Honigman and Hawldns, Michigan Court Buies Annotated (2d ed), rule 204, author’s comment (3), p 507, suggesting that trial judges allow impleader to preserve the right of contribution under the statute.
 

 [8]
 

 Husted
 
 v.
 
 Consumers Power Co., supra,
 
 p 47.
 

 [9]
 

 See Vol 22 Stat Ann following § 27A.2925, p 171, for committee comments.
 

 Prior to the general procedural revision which resulted in the enactment of the revised judicature act and the promulgation of the general court rules of 1963, no Michigan rule or statute provided a third party practice. In a case where the Federal third party practice (rule 14, Federal rules of civil procedure) was invoked, it was held that since the Michigan statute provided for contribution only where a “judgment
 
 had been recovered jointly
 
 against 2 or more defendants,” the Michigan legislature intended to preserve to the plaintiff alone the right to determine whom ho would look to
 
 *323
 
 for satisfaction of liis elaim, with the result that the defendant could not implead as third party defendant one who might have been liable for contribution had the plaintiff elected to sue such third party as well as the defendant.
 
 Buckner
 
 v.
 
 Foster
 
 (ED Mich, 1952), 105 F Supp 279.
 

 [10]
 

 As amended, the contribution portion of the statute now provides: “(1) Whenever a money judgment has been recovered jointly against 2 or more defendants in an action for bodily ury or death resulting therefrom, or property damage, and such judgment has been paid in part or in full by 1 or more of such defendants, eaeh defendant who has paid more than his own pro rata share is entitled to contribution with respect to the excess so paid over and above the pro rata share of the defendant or defendants making such payment. Joint tort-feasors who are summoned in as third party defendants pursuant to court rule may likewise be liable for contribution. No person may be compelled to pay to any other defendant an amount greater than his pro rata share of the entire judgment.” Revised judicature aet, § 2925(1), MOLA, § 600-.2925(1) (Stat Ann 1962 Rev §27A.2925).
 

 [11]
 

 18 Am Jur 2d, Contribution, § 8, p 16. In
 
 Busted
 
 v.
 
 Consumers Power Co., supra,
 
 the court considered Maryland’s joint tort-feasors aet, declared it a duplicate in substance of PA 1941, No 303, and approvingly quoted the following (p 56) : “The common obligation contemplated by this aet is the common liability of the tort-feasors to suffer adverse judgment at the instance of the injured person whether or not the injured person elects to impose it.”
 

 [12]
 

 Compare
 
 Steele
 
 v.
 
 Thompson
 
 (1880), 42 Mich 594, 596;
 
 Bowden
 
 v.
 
 Voorheis
 
 (1904), 135 Mich 648, 650;
 
 Hylo
 
 v.
 
 Michigan Surety Company
 
 (1948), 322 Mich 568;
 
 Fletcher
 
 v.
 
 Flynn
 
 (3962), 368 Mich 328;
 
 Ruediger
 
 v.
 
 Klink
 
 (1956), 346 Mich 357, 366.
 

 [13]
 

 Pour justices wrote to overrule
 
 Geib
 
 v.
 
 Slater, supra,
 
 on other grounds in
 
 Moore Palmer
 
 (1957), 350 Mich 363.
 

 [14]
 

 Accord: Prosser, Law of Toris (3d ed), pp 258, 269.
 

 [15]
 

 See
 
 Lindsay
 
 v.
 
 Acme Cement Plaster Co.
 
 (1922), 220 Mich 367, 375;
 
 Moffit
 
 v.
 
 Endtz
 
 (1925), 232 Mich 25;
 
 Slater
 
 v.
 
 Ianni Construction Co.
 
 (1934), 268 Mich 492, 494;
 
 Watts
 
 v.
 
 Smith
 
 (1965), 375 Mich 120, 125. Por more such usage, see Restatement, Torts (1939), § 885, Comment, p 462: “At present persons whose independent tortious conduct contribute to a tort are in most eases (see § 879) regarded as joint tortfeasors without distinction between such persons and those who co-operate in producing a tortious result.” Compare
 
 Knell
 
 v.
 
 Feltman
 
 (1949), 85 App DC 22 (174 F2d 662, 663), where the court observed: “Por so long courts have used the terms ‘joint tort-feasors’ and ‘concurrent tort-feasors’ interchangeably that the usage must be accepted.”
 

 [16]
 

 The title of the statute in question (PA 1941, No 303) announces that what follows concerns contribution among and release of “tortfeasors.” The term
 
 “joint
 
 tort-feasor” was not used in § 1 concerning contribution as originally enacted. Section 1 as originally enacted simply declared that those against whom a judgment had been recovered
 
 jointly
 
 would be liable for contribution. It was not until § 1 was amended upon adoption of the revised judicature act that the term “joint tort-feasor” was interjected. Nevertheless, in companion § 2, concerning the effeet of one tort-feasor’s release on the liability of another, the term
 
 “joint
 
 tort-feasor” was used in the original enactment. Section 3, concerning an insurer’s right to enforce contribution as subrogee, does not use either the term “joint tort-feasor” or “tort-feasor”; rather it refers to an insured person “jointly or severally liable.” No changes were made in §§ 2 or 3 when reenacted as part of RJA. § 2925.
 

 . We do not think that when
 
 originally
 
 enacted § 1, which did not then contain the term joint tort-feasor, was intended to deal with one kind of tort-feasor, and § 2, which originally contained that term, with another kind of tort-feasor — § 1 concerning those who today may bo held jointly liable in one action (including independent tortfeasors whose acts or omissions contribute to an indivisible injury [See,
 
 e.g., Gleason
 
 v.
 
 Hanafin
 
 (1944), 308 Mich 31, 37;
 
 Banzhof
 
 v.
 
 Roche
 
 (1924), 228 Mich 36, 40;
 
 Maddux
 
 v.
 
 Donaldson
 
 (1961), 362 Mich 425;
 
 Meier
 
 v.
 
 Holt
 
 (1956), 347 Mich 430, 446;
 
 Watts
 
 v.
 
 Smith
 
 (1965), 375 Mich 120;
 
 Coles
 
 v.
 
 Galloway
 
 (1967), 7 Mich App 93, 98;
 
 Barkman
 
 v.
 
 Montague
 
 (1941), 297 Mich 538, 542;
 
 Conover
 
 v.
 
 Hecker
 
 (1947), 317 Mich 285, 290;
 
 Grand Trunk W. R. Co.
 
 v.
 
 Lovejoy
 
 (1942), 304 Mich 35, 46]), and §2 those who 200 years ago could be sued jointly (concerted wrongdoers aeting pursuant to a eommon design).
 

 Nor did the procedural revisers, whose stated purpose in amending § 1 was to expand the availability of the contribution remedy, intend by injection of the term joint tort-feasor in § 1 either to put § 1 back in the 18th century with § 2 (the interpretation of § 2 adopted in Geib) or to develop a new distinction,
 
 i.e.,
 
 all those jointly liable
 
 *327
 
 and originally named by tlie plaintiff must contribute without regard to whether they are technically joint tort-feasors, but those impleaded need only contribute if their aetion was concerted pursuant to a common design.
 

 See Vol 22 Stat Ann following § 27A.2925, p 171, for committee comments, and
 
 Husted
 
 v.
 
 Consumers Power Co., supra,
 
 where the Court observed (p 47): “the aet of 1941 was ehanged in minor degree (to accommodate the new procedure only and not to change the substanee).”
 

 The use of the term joint tort-feasor in § 2, concerning release, and in the general procedural revision amendment to § 1, concerning contribution, was unfortunate. That misnomer should not, however, defeat its apparent purpose.
 

 [17]
 

 Geib
 
 v.
 
 Slater
 
 could, of course, be distinguished on the ground that there the liability of one of the tort-feasors was statutory and that of the other arose at common law, whereas here the act of negligence charged against both tavern owners is based upon violation of the same statutory duty. That distinction would, however, ignore
 
 Geib’s
 
 express “the same reasoning applies in the instant case” in reference
 
 to
 
 the
 
 Frye text
 
 it quoted: “If the acts of the different persons are different and separate when done, they may not be called joint acts because they happen to occur at the same time or different times and affect the same person, neither party having any design in the matter or any control or influence over the acts of the other.” It would also ignore
 
 Geib’s
 
 pointed statement that the question then decided had not been presented or considered in
 
 Conover
 
 v.
 
 Hecker
 
 (1947), 317 Mich 285.
 
 Conover
 
 relied on § 2 of the statute in holding that the release of one tort-feasor did not discharge others; the tort-feasors in that case were of the independent, concurrent genre. It would, finally, ignore
 
 Geib’s
 
 distinction of
 
 Larabell
 
 v.
 
 Sehuknecht, supra,
 
 a dramshop aet ease referring to tavern owners as “joint tort-feasors,” on the ground that
 
 Larabell
 
 involved a covenant not to sue.
 

 See, also,
 
 Varano
 
 v.
 
 Express Freight Lines, Inc.
 
 (ED Wis, 1959), 176 F Supp 71, applying
 
 Geib’s
 
 rule in a case governed by Michigan law to bar a cause of aetion against the owner of a third ear, where plaintiff had released the owner of one ear with which plaintiff’s car had collided.
 

 [18]
 

 Although PA 1941, No 303, in failing expressly to define “joint tort-feasor” as meaning both independent and concerted wrongdoers, differs from like legislation adopted in other States, it is, nonetheless, still significant that
 
 Geib’s
 
 result is contrary to the trend of authority. Annotation: Release of one joint tort-feasor as dis
 
 *328
 
 charging liability of others; Modern Trends, 73 ALR2d 403. See, also, Annotation: Uniform contribution among tortfeasors act, 34 ALR2d 1107. Of interest is the elimination in the 1955 revision of the Uniform Contribution Among Tortfeasors Act of the term
 
 “joint
 
 tortfeasor” and the substitution of the term “tortfeasor” wliieh is not expressly defined. See commissioner note to 9 ULA 1967, Cum Supp p 128.
 

 [19]
 

 Prosser, Law of Torts (3d ed), pp 270, 274; see, also, Corbin, Contracts, § 931, for an enlightening discussion of the doctrine that release of certain co-obligors discharges remaining co-obligors, as applied in both the contract and tort cases.
 

 See
 
 MacDonald
 
 v.
 
 Henry Hornblower & Weeks, supra,
 
 where the court observed: “The law of joint tort-feasors has been the subject of many refinements of reasoning and mueh conflict of opinion.”
 

 [20]
 

 However, as to contribution, a distinction is drawn 'in .some jurisdictions between intentional and negligent wrongdoers. See IS Am Jur 2d, Contribution, § 41.
 

 [21]
 

 Boucher
 
 v.
 
 Thomsen
 
 (1950), 328 Mich 312, 316.
 

 [22]
 

 While in this case
 
 Geib
 
 v.
 
 Slater, supra,
 
 does not control (see part V,
 
 infra),
 
 application of the rule there stated would preven* the assertion of a right of contribution by impleader among independent tort-feasors whose concurring acts of
 
 negligence
 
 cause one injury. That is the typical case, not this one. Indeed, if, as has been held in some jurisdictions (see footnote 20) the remedial legislation does not apply to intentional wrongdoers and, if because of
 
 Geib
 
 v.
 
 Slater
 
 it does not apply to independent negligent wrongdoers whose concurring acts of negligence cause the injury, then its office has been limited to the situation where the injury "is eaused by two or more negligent wrongdoers who act in concert and the situation (originally covered by PA 1941, No 303, before it was amended in 1961 and reenacted as EJA, § 2925) where the plaintiff chooses to sue two or more tort-feasors and has recovered a money judgment jointly against them.
 

 This suggests that the 1961 amendment should be regarded as overruling the rule of
 
 Geib
 
 v.
 
 Slater,
 
 at least for eases where contribution is sought by impleader; in this connection, see, also, footnote 16 and text accompanying footnote 17. As - to whether .We should follow a decision of our Supreme Court which we are convinced the Supreme Court would no longer follow, see the opinions m
 
 Abendschein
 
 v.
 
 Farrell
 
 (1968), 11 Mich App 662, 680.
 

 In
 
 Morgan
 
 v.
 
 McDermott
 
 (1967), 8 Mich App 260, the defendant was allowed to implead another alleged tort-feasor on the claim that the latter’s alleged independent act of negligence combined with the act of negligence charged against the defendant to cause a single indivisible injury. No mention was made of
 
 Geib
 
 v.
 
 Slater
 
 in tho court’s opinion in that ease; similarly see
 
 Rodebaugh
 
 v.
 
 Grand Trunk W. R. Co.
 
 (1966), 4 Mich App 559. In
 
 Ortiz
 
 v.
 
 Travelers Insurance Company
 
 (1966), 2 Mich App 548, 554, the question whether independent tort-feasors whose concurrent acts of negligence .combine to cause one injury are joint tort-feasors under
 
 Geib
 
 v.
 
 Slater
 
 was noted but not decided.
 

 [23]
 

 The action there was for conversion. The report of the case is brief. That the wrongdoers there aeted intentionally and in concert is the view of both Dean Prosser (Prosser, The Law of Torts [3d ed], p 273) and Professors Harper and James (1 Harper and James, The Law of Torts, § 1002, p 715). Of interest is that Michigan’s early case denying contribution between “joint tort-feasors,”
 
 Upham
 
 v.
 
 Dickinson, supra,
 
 relied on
 
 Merriweather
 
 v.
 
 Nixan, supra,
 
 and was, like
 
 Merriweather
 
 v.
 
 Nixan,
 
 an action for conversion.
 

 [24]
 

 In a number of jurisdictions the rule is not applied to deny contribution among negligent tort-feasors. See
 
 Best
 
 v.
 
 Yerkes
 
 (1956),
 
 *331
 
 247 Iowa 800 (77 NW2d 23, 60 ALR2d 1354), and
 
 George’s Radio
 
 v.
 
 Capitol Transit Co.
 
 (1942), 75 App DC 187 (126 F2d 219), and cases therein collected. Dor additional authorities both ways see annotation: Contributions Between Negligent Tort-Peasors at Common Law, 60 ALR2d 1366.
 

 [25]
 

 Howlett
 
 v.
 
 Doglio
 
 (1949), 402 Ill 311 (83 NE2d 708, 6 ALR 2d 790); 15 Michigan Law
 
 &
 
 Practice, Liquor, § 61;
 
 Holland
 
 v.
 
 Raton
 
 (1964), 373 Mich 34, 39. See, also, annotation: Bight of action at common law for
 
 damage
 
 sustained by plaintiff in consequence of sale or gift of intoxicating liquor or habit forming drugs to another, 75 ALR2d 833, 835, for a statement of the general principle as well as limitations and exceptions. Also pertinent. is the annotation: Wife’s right of action for loss of consortium, 23 ALR2d 1378, 1384, and the comment, Common law liability of the liquor vendor, 18 W Res L R 251 (1966).
 

 [26]
 

 Gullikson
 
 v.
 
 Gjorud
 
 (1890), 82 Mich 503, 505;
 
 Vice
 
 v.
 
 Sherberneau
 
 (1908), 152 Mich 601, 606;
 
 Kreiter
 
 v.
 
 Nichols
 
 (1874), 28 Mich 496, 497;
 
 In re Miller’s Estate
 
 (1910), 160 Mich 309, 317;
 
 Jones
 
 v.
 
 Bourrie
 
 (1963), 369 Mich 473, 476; 30 Am Jur, Intoxicating Liquors, §§ 544, 546.
 

 See, also, eases collected at footnote 13;
 
 Anschutz
 
 v.
 
 Liquor Control Commission
 
 (1955), 343 Mich 630, 635;
 
 People
 
 v.
 
 Pavlic
 
 (1924), 227 Mich 562, 566;
 
 Bailey
 
 v.
 
 Briggs
 
 (1906), 143 Mich 303, 305;
 
 Battie
 
 v.
 
 Roth
 
 (1919), 208 Mich 173, 178;
 
 State of New Hampshire v. Dubruiel
 
 (1909), 75 NH 369 (74 A 1048, 25 LRA NS 801).
 

 [27]
 

 See
 
 Hack Investment Co.
 
 v.
 
 Concrete Wall Co.
 
 (1959), 356 Mich 416, where, prior to the 1961 amendment adding the term joint tortfeasor to the contribution provision of the statute, the Court held that an action for contribution could not be instituted at
 
 law
 
 on the theory that the action was maintainable at common law in the face of the statutory requirement, eliminated by amendment as part of the general procedural revision, that the action for contribution must be by suit in equity. PA 1941, No 303, § 4. While the Court declared 'that the statutory provision in question allows action for contribution “without reference to the precise basis on which the liability of each defendant tort-feasor is based,” it expressly went on to rule that “the statute is not in 'derogation of the common law in the sense that it takes away
 
 any
 
 right of action
 
 previously existing”
 
 (p 423), although it was intended to provide a “uniform method of
 
 procedure”
 
 even as to “possible exceptions to the general rule.” (p 424) (Emphasis supplied.) See, also, the statement in
 
 Husted
 
 v.
 
 Consumers Power Co., supra,
 
 p 47, that the general procedural revision did not change the substance of the 1941 act.
 

 On
 
 Hack’s
 
 and
 
 Husted’s
 
 authority we think it clear the Court has not interpreted the statute as preempting common law rights to contribution among tort-feasors — among, if you like, those declared in
 
 Gelb
 
 not to be joint tort-feasors — even though the Court has declared that the statute provides a uniform method of
 
 procedure
 
 for enforcing such rights.
 

 [28]
 

 Prosser, Law of Torts (3d ed), p 277; 18 Am Jur 2d, Constitution, §§ 74 and 92;
 
 Kelly
 
 v.
 
 Sproul
 
 (1908), 153 Mich 691;
 
 Schott
 
 v.
 
 Colonial Baking Co.
 
 (WD Ark, 1953), 111 F Supp 13. The cases are reviewed and diseussed at some length in
 
 Cooper
 
 v.
 
 Philadelphia Dairy Prod. Co.
 
 (1955), 34 NJ Super 301 (112 A2d 308) and in annotation: Running of statute of limitations against claim for contribution or indemnity based on tort, 20 ALR2d 925, 928. See, also,
 
 Keleket X-Ray Corporation
 
 v.
 
 United States
 
 (1960), 107 App DC 138 (275 F2d 167).
 

 Furthermore,
 
 Mach
 
 (see note 27), in declaring that the statute provides a uniform method of procedure, may have made the provision of subdivision 4 of RJA § 2925, which states that any claim for contribution must be asserted within 6 months after discharge of the common liability, applicable to both the statutory and common • law action for contribution.
 

 [29]
 

 See
 
 Long
 
 v.
 
 Dudewicz
 
 (1959), 355 Mich 469, 471;
 
 Davies
 
 v.
 
 Terrien
 
 (1961), 364 Mich 82, 83;
 
 Grinstead
 
 v.
 
 Anscer
 
 (1958), 353 Mich 542, 552.